```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK


In re:                             :
                                      Docket #20-cv-02663-
 PALMIERI,                         : RA-BCM

                  Plaintiff,       :

  - against -                      :

 EAST COAST POWER & GAS, LLC, et al.,: New York, New York
                                      November 6, 2020
                  Defendants.      :
                                     TELEPHONE CONFERENCE
------------------------------------ :


                      PROCEEDINGS BEFORE
            THE HONORABLE JUDGE BARBARA C. MOSES,
                UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff:          LAW OFFICES OF MICHAEL D. STEGER, PC
                        BY:  MICHAEL DOUGLAS STEGER, ESQ.
                        30 Ramland Road, Suite 201
                        Orangeburg, New York 10962
                        646-517-0600


For Defendants:         LEVITT LLP
                        BY:  TREVOR M. GOMBERG, ESQ.
                        129 Front Street
                        Mineola, New York 11501
                        516-248-9700




Transcription Service:  Carole Ludwig, Transcription Services
                        155 East Fourth Street #3C
                        New York, New York 10009
                        Phone:  (212) 420-0771
                        Email:  Transcription420@aol.com


Proceedings conducted telephonically and recorded by
electronic sound recording;
Transcript produced by transcription service
```

## <u>INDEX</u>

### <u>E X A M I N A T I O N S</u>

| <u>Witness</u> | <u>Direct</u> | <u>Cross</u> | <u>Re-<br>Direct</u> | <u>Re-<br>Cross</u> |
|---|---|---|---|---|
| None | | | | |

### <u>E X H I B I T S</u>

| <u>Exhibit<br>Number</u> | <u>Description</u> | <u>ID</u> | <u>In</u> | <u>Voir<br>Dire</u> |
|---|---|---|---|---|
| None | | | | |

```
1                         PROCEEDINGS                    3

2              THE CLERK:  Good morning. Calling case number 20

3    civil 2663, Palmieri v. East Coast Power & Gas, LLC et al.

4              Counsel, will you please state your appearances

5    for the record, beginning with the plaintiff?

6              MR. MICHAEL STEGER:  Good morning. Michael Steger

7    on behalf of plaintiff, Vincent Palmieri.

8              HONORABLE BARBARA C. MOSES (THE COURT):   Good

9    morning, Mr. Steger.

10             MR. TREVOR GOMBERG:  Good morning, your Honor.  On

11   behalf of defendants, East Coast Power & Gas, LLC; Anthony

12   Milanese, and John Knief, Levitt LLP, appearing by Trevor

13   Gomberg.  That's G-o-m-b-e-r-g, 129 Front Street, Mineola,

14   New York. Good morning, your Honor.

15             THE COURT:  Good morning, Mr. Gomberg.

16             So this is our first conference since the district

17   judge referred the case to me for, among other things,

18   discovery disputes. Before we get to the merits of the

19   parties' current discovery disputes, I'd like to take the

20   opportunity to address some broader issues with counsel.

21             So long as you are under my jurisdiction for

22   discovery disputes, I will expect you, as I think all of my

23   colleagues in the Southern District, will expect you to

24   meet and confer in good faith and promptly before bringing

25   a discovery dispute to the Court. I am a little unclear as
```

1                          PROCEEDINGS                    4

2   to whether that happened here or what did happen here, and

3   I will address this question to Mr. Gomberg, because in

4   your opening letter, your October the 26th letter, which

5   was addressed to Judge Abrams, you said in the first

6   paragraph that you were seeking judicial intervention

7   after, quote, "having engaged unsuccessfully in the meet-

8   and-confer process" with respect to the two issues you

9   brought to the Court's attention, number one, the

10  subpoenas; and, number two, the interrogatories. But in

11  your reply letter, dated November the 3rd, which was

12  addressed to me because the district judge had in the

13  interim referred the dispute to me, you state on page two,

14  quote, "rather than addressing these deficiencies in a

15  total discovery free-for-all, plaintiff in its opposition

16  seeks to backdoor party discovery issues for which there

17  has been no meet-and-confer. And then you go on to say

18  plaintiff's positions are unavailing, in any event.  So

19  perhaps you could outline for me when the parties discussed

20  both the procedural and the substantive issues that are

21  dividing them at present and who called whom and when that

22  happened and what was discussed.

23          MR. GOMBERG:  I'd be happy to do so, your Honor.

24  And I meant no inconsistency in my letters. Part of that is

25  I was trying to draft letters that were in compliance,

```
1                        PROCEEDINGS                    5
2    first, with Judge Abrams' individual rules and practices,
3    and then of course your Honor's individual practice rule
4    2(b), which is just slightly different. Judge Abrams' part
5    rules call for a representation that the parties have
6    engaged in the meet-and-confer process and that it was
7    unsuccessful.
8              THE COURT:  Right.
9              MR. GOMBERG:  And we did so.  That meet-and-confer
10   conversation happened on October 15, 2020, during which,
11   among other items that are not directly pertinent to this
12   call but are related to discovery, the parties did discuss,
13   number one, the subpoenas and whether plaintiff would be
14   willing to narrow them; and, number two, interrogatory
15   responses.  So that meet-and-confer did happen.
16             What was not discussed during the meet-and-confer
17   precipitating this application or Mr. Steger's response was
18   anything relating to party discovery -- the scope of party
19   document discovery, I should say.  So that was not the
20   subject of a meet-and-confer; therefore, in our reply we
21   advised the Court that we felt that any discussion of those
22   party document discovery issues was premature.
23             THE COURT:  Okay. So thank you for that
24   clarification. I now understood what you intended by each
25   of the passages that I read out to you.  But I remain
```

2  somewhat confused in the "let's get to the substance and

3  not worry too much about the mechanics" sense. I remain

4  somewhat confused because the plaintiff has certainly

5  convinced me, if nothing else, that the relevancy and

6  overbreadth issues, which are the primary basis for your

7  motion to quash the subpoenas, are also issues that were

8  squarely raised by the earlier and still pending party

9  discovery request, the Rule 34 document requests. So I

10 guess I'm scratching my head a little bit and asking myself

11 how is it possible that you had a conversation in which you

12 discussed whether a certain provision of the subpoena which

13 asked for a certain type of document was overbroad, but you

14 did not discuss whether essentially the same request made

15 earlier in a Rule 34 document demand was not -- defective

16 or not defective, as the case may be, in exactly the same

17 way. Did you really compartmentalize your discussion in

18 that manner?

19         MR. GOMBERG:  We actually did, your Honor.  And

20 here's why. In terms of discussing the subpoenas, first,

21 there was a short fuse on that with a return date of

22 November 6th.  And so, therefore, we wanted to put in our

23 application to the court as soon as reasonably practicable,

24 after having conferred with counsel to give him an

25 opportunity either to withdraw those applications or to see

```
 1                           PROCEEDINGS                    7

 2   if they could possibly be narrowed.  This should perhaps be

 3   looked at in a broader context. The parties have been

 4   discussing a Protective Order that was only recently

 5   entered. And, therefore, you know, we were trying to get

 6   those in place because of the nature of documents to be

 7   produced in the action. And so, given the posture of that,

 8   the parties did in fact compartmentalize that.  And a

 9   meet-and-confer will be conducted on the discovery issues,

10   the prior discovery issues on Monday afternoon.

11             THE COURT:  Would you agree with the counsel that

12   there is a significant degree of overlap substantively in

13   the categories of documents sought by the subpoenas and the

14   categories of documents sought by the Rule 34 document

15   demand?

16             MR. GOMBERG:  Yes, I would agree there was

17   overlap, your Honor, to some extent; not exactly, because

18   it is seeking documents, you know, of course, that would

19   only be -- well, let me withdraw that and think about your

20   question as I respond. But I do believe that there is some

21   overlap. I wouldn't say they're identical, your Honor.

22             THE COURT:  No, I'm not suggesting they're

23   identical.  And I understand that the documents, which may

24   physically be in your accountant's files, your client's

25   accountant's files, may not be the same documents as are
```

physically in your client's own files at their office or

place of business. But the issues in terms of what are the

proper bounds of relevance here strike me as very similar,

if not identical. I'm not suggesting identical.

All right, so now I have a question for

Mr. Steger, also a sort of high-level question, so to

speak, before we get to any individual issues. Mr. Steger,

I know you agree with me that the subpoenas seek many of

the same documents or at least documents going to the same

kinds of information that you previously requested in your

Rule 34 document demand as to which defendant has not yet

produced documents, correct?

MR. STEGER:  Michael Steger on behalf of the

plaintiff. Yes, yes, your Honor.

THE COURT:  In fact, I think it's fair to read

into your opposition letter that that's one of the reasons

you sent the subpoenas, because you were not getting

satisfaction from the opposing party in response to your

Rule 34 document requests?

MR. STEGER:  That's correct, your Honor.

THE COURT:  All right, looking at the timing of

it, if I understand the timeline set forth in your letter,

the responses to the document demands, the party document

demands, were due and the objections were served in late

```
 1                          PROCEEDINGS                    9
 2   August.  August 24th I think is the date if I recall it
 3   correctly from your letter.  And instead of going at it
 4   with opposing counsel in an effort to sort out what you
 5   would and wouldn't get under Rule 34 and seeking the
 6   assistance of the Court if you could not satisfactorily
 7   come to a compromise there, you waited six weeks during
 8   which you did not meet and confer substantively on the
 9   document demand and sent out the subpoenas instead, thus
10   giving rise to your opponent's characterization of your
11   efforts as a back-door effort.  Why did you do that
12   instead of addressing the issue in a more straightforward
13   manner in the context of your pending Rule 34 document
14   demand?
15             MR. STEGER:  Well, there are a couple of reasons
16   for that, your Honor.  We, as Mr. Gomberg said, we were
17   negotiating in good faith a Protective Order, and that did
18   take quite a while with really no fault on either side in
19   getting that to come in. I was also attempting to wait to
20   see what documents would be produced while the defendants
21   objected and said they would not produce certain types of
22   documents. My experience has been that frequently those
23   objections are made, and then responsive documents are
24   frequently produced, anyway. The defendants did produce
25   documents yesterday, quite a voluminous set that I have
```

```
 1                          PROCEEDINGS                   10

 2   not had time to review.

 3            But we were also running into the -- I was

 4   running into deadlines with the discovery schedule to get

 5   things moving with any third parties.  And the tax

 6   information that my client received for 2019 and 2018

 7   included some dramatic changes in what he had received from

 8   the accountants, which led us to believe there was going to

 9   be relevant information that the accountants were going to

10   have that the defendant was not going to produce.

11            THE COURT:  All right, a couple of other things. A

12   housekeeping matter. Under my individual practices, Judge

13   Moses's individual practices, you are required to attach to

14   your moving letter application or your responding letter

15   application, as the case may be, copies of the discovery

16   demands and responses in issue. I can't fault the moving

17   party here for failing to do that in his moving letter

18   because that was before the matter was referred to me, but

19   it took a lot of nagging from chambers to actually

20   ultimately get a copy of, for example, the interrogatories

21   themselves and the supplemental responses, which just came

22   in, I think, at about nine o'clock this morning after a

23   couple of telephone calls to you, Mr. Steger, is that

24   correct?

25            MR. STEGER:  I submitted the copy of the
```

```
 1                         PROCEEDINGS                    11
 2   supplemental interrogatories late yesterday afternoon,
 3   after we received a call from chambers.
 4        THE COURT:  Oh, all right. Okay. So I was right
 5   about the nagging but wrong about the timing. I didn't see
 6   them until nine o'clock this morning. Okay.
 7        So for future reference, gentlemen, as long as you
 8   are bringing your discovery disputes to Judge Moses, don't
 9   make us nag you. I don't want to see every document demand,
10   I don't want to see every response if they're not all in
11   dispute; but the ones which are in dispute, I don't want to
12   just see how you characterize them in your letters. I
13   actually want to see the thing that you served or the
14   objections that you served, as the case may be. So please
15   make a note for the future.
16        Now, one other technical matter -- and I don't
17   mean technical in a dismissive sense in this sense; I
18   think it is potentially a significant problem here for
19   defendants. How is it that East Coast Power & Gas had
20   standing to move to quash subpoenas served on non-parties?
21   The rule in the Second Circuit -- and not just in the
22   Second Circuit -- but certainly in the Second Circuit is
23   that ordinarily a party does not have standing to move to
24   quash or limit a non-party subpoena unless the moving party
25   claims, and I quote, "some personal right or privilege,"
```

1                          PROCEEDINGS                    12

2    close quote, regarding the documents.  This is an issue

3    that the Second Circuit has written on very recently in

4    *Trump against Vance*, 941 F.2nd 631; 642, note 15. In that

5    case it was held that President Trump did have a personal

6    right or privilege with regard to a subpoena served on his

7    accountant, namely a Presidential privilege that we all

8    read about in the newspaper that he claimed -- and it's

9    still litigating. Judge Moses wrote about the same point a

10   couple of years ago in *Ortiz against Mount Sinai*, 169 F.

11   Supp. 3rd, 538 at 544 to 45.  That is from the Southern

12   District, of course, in 2016. So with the exception of the

13   quasi-privilege applicable to the tax returns, which I

14   would put in your column, Mr. Gomberg, as a personal right

15   or privilege, what gives your client standing otherwise to

16   object to the subpoenas at issue here?

17              MR. GOMBERG:  Well, I'm glad your Honor asked the

18   question. And we were going to include that as part of our

19   presentation today. Of course there's a personal right or

20   privilege.  We were looking at a different case, although

21   I think your Honor's cases are more recent. We were

22   looking at a case by Judge Francis, *Allison v. Claus*, F.2,

23   2015, Westlaw 136102, standing for the exact same

24   proposition. But in terms of your Honor's question, the

25   personal right or privilege is that the documents in the

```
 1                         PROCEEDINGS                  13
 2   possession of the accountants are effectively documents of
 3   East Coast. Documents are prepared on East Coast's behalf,
 4   financial statements in which the accountants have input.
 5   That goes to request number one.
 6              Your Honor mentioned request number two, which
 7   is the tax returns.  Documents pertinent to East Coast's
 8   gross revenues -- this is request number three --
 9   compensation for East Coast's -- defendant East Coast's
10   principals, who are co-defendants Milanese and Knief,
11   capital contributions, capital withdrawals and loans made
12   by or to those principals.  And those are requests four
13   through nine, your Honor -- four through ten, actually.
14   And then documents concerning other compensation matters
15   and communications with East Coast. So we're talking every
16   one of Mr. Steger's 12 demands, your Honor, and the two
17   substantively identical subpoenas do go to personal rights
18   of East Coast and/or its principals, the co-defendants -- I
19   should say its other principals.
20              THE COURT:  Counsel, I completely disagree with
21   you. I think you are misunderstanding the distinction drawn
22   in those cases. A personal right or privilege has to do
23   with the nature of the objection being made, not your
24   theoretical relationship to the documents. And when I look
25   at the nature of the objections being raised to the
```

```
 1                        PROCEEDINGS                  14
 2   subpoena -- and I'm looking now at your moving letter dated
 3   October the 26th -- with the exception of the tax
 4   documents, which, as I said, I think you have adequately
 5   raised a personal right or privilege with respect to the
 6   tax documents, adequately raised for standing purposes --
 7   but as to every other objection that you have made to
 8   every other category, it's relevance, relevance, relevance,
 9   relevance, relevance.  And the general rule is a party does
10   not have standing to object to a non-party subpoena on that
11   ground because that round does not raise a personal right
12   or privilege.
13           Now, I grant you that the documents are, in some
14   sense, yours. And not just in some sense but in a Rule 34
15   sense, by which I mean that if the question were put to me
16   squarely -- and perhaps it will be in short order -- I
17   would likely hold, because I have so held in the past,
18   that documents in the physical files of a party's
19   accountant are deemed to be within the control, i.e.,
20   within the, quote, "possession, custody or control," which
21   is the language in Rule 34, are deemed to be within the
22   control of the party itself for Rule 34 purposes.
23           So typically, what would happen in a case like
24   this is that the plaintiff would send the Rule 34 document
25   request to the defendant, the parties would argue about
```

```
 1                          PROCEEDINGS                    15

 2   the appropriate bounds of relevance. If they couldn't

 3   agree on it, they would bring the dispute to me.  And once

 4   those matters were resolved, I would expect the defendant

 5   to produce documents that were responsive to the

 6   appropriate requests, not only from their own physical

 7   files but also, if necessary, to procure them from the

 8   files of its accountant over which the defendant exercised

 9   control. That's what would happen in a normal case.

10             A number of shortcuts were attempted in this

11   case on both sides.  The plaintiff attempted a shortcut by

12   sending a short-fuse subpoena directly to the accountant,

13   and the defendant attempted a shortcut by moving to quash,

14   as to which it doesn't as a technical matter for the most

15   part have standing. So I think we've kind of all started

16   off on the wrong foot here, gentlemen.

17             Let's look practically here down the road. What

18   are the parties' real needs for getting this sorted out in

19   time to get depositions done in time to timely complete

20   discovery? Plaintiff, let me hear from you first.

21             MR. STEGER:  Well, your Honor, that's a good

22   question.  And I don't -- Mr. Gomberg and I had a lengthy

23   discussion yesterday about some of the issues before you

24   but also other discovery issues.  And we are trying to

25   figure out what a reasonable schedule is going to be to
```

1
2    complete this written discovery here. You know, we are,

3    obviously, a bit behind schedule.  There has been some

4    documents produced by the defendant. Plaintiff anticipates

5    producing documents on Monday. As far as some of these

6    document requests, you know, we both thought -- and if I'm

7    speaking out of turn, I'm sure Mr. Gomberg will correct

8    me -- that, you know, some of the issues to a degree can be

9    sorted out regarding the party discovery without further

10   intervention of the Court, although there may be some need

11   for further discussions down the road.

12        THE COURT:  Your discovery cutoff is December

13   something, right?

14        MR. STEGER:  December 21st is the fact discovery

15   cutoff. I think Mr. Gomberg was going to mention it. I'm

16   sorry, I'm getting a little off track from your direct

17   question, your Honor, but I believe Mr. Gomberg has an

18   arbitration coming up in December, and there's also a

19   pending Motion to Dismiss before Judge --

20        THE COURT:  Yes, look, I can extend that deadline

21   for you.

22        MR. GOMBERG:  Very much appreciated, your Honor.

23        THE COURT:  And maybe we need to start there and

24   then start putting discovery on a little more of a rational

25   track that will perhaps encourage the parties to actually

1                          PROCEEDINGS                    17

2    work as much of this out as they can between themselves.

3              How many depositions are there going to be,

4    roughly? I'm not going to hold you to this; I'm just -- for

5    planning purposes.

6              MR. STEGER:  On the plaintiff's side, I'd say

7    five, probably five.

8              THE COURT:  That's a lot. Who are they going to

9    be, the individually-named defendants? Are you going to do

10   a Rule 30(b)(6) of the LLC?

11             MR. STEGER:  Well, probably the CFO, who may

12   be -- you know, and the 30(b)(6) may be one or, you know,

13   one or more of the members or the CFO.  And then --

14             THE COURT:  And then are you going to want to take

15   any third-party or non-party depositions?

16             MR. STEGER:  Depending on what documents we get,

17   you know, we may want to depose one or more of the

18   accountants.

19             THE COURT:  Okay, and defendant, what are you

20   thinking of in terms of depositions?

21             MR. GOMBERG:  Thank you, your Honor. You would

22   probably be thinking the same, although it looks a little

23   different for us. Of course, you have the plaintiffs; but

24   then there -- look, I mean, our theory of the case,

25   although issue isn't joined -- and that's part of the

```
 1                        PROCEEDINGS                    18
```

complexity here, your Honor, in light of the Rule 12

motion, which goes to jurisdictional grounds, but --

THE COURT:  Well, look, but the Rule 12 motion,

which goes to jurisdictional grounds, also seems to have

found its way substantially into the parties' current

discovery dispute -- and just to preview those issues a

little bit for you, just as I feel that both sides here

have attempted an inappropriate shortcut in their discovery

strategies, it seems to me that both sides are playing

games with the issue of whether the plaintiff is or is not

a member of the defendant LLC.

Not to put too fine a point on it, but both sides

are trying to have it both ways.  The plaintiff has clearly

pleaded, at least in his amended Complaint, that he is no

longer a member of the LLC because the defendants expelled

him from the LLC and effectively took back his membership

interest, and he wants to be paid for that according to the

terms of the parties' contract.  And there's a dispute over

whether he gets paid a little bit of money or a lot of

money, which in turn depends on whether he was fired and

expelled for cause or without cause. But the answer cannot

be that he has no interest in the LLC and also doesn't get

paid for it.

As a sort of argument point, alternative, the

1                            PROCEEDINGS                        19

2  plaintiff is saying to me, well, and if I am still a member

3  of the LLC, then one of the things that I get, one of the

4  sticks in the bundle of rights that constitutes being a

5  member of the LLC, is I get inspection rights. So I would

6  get to see all of these documents, anyway. And that's what

7  the defendant calls trying to have it both ways.

8            But the defendant is also trying to have it both

9  ways because the defendant appears to be taking the

10 position, is taking the position in his jurisdictional

11 Motion to Dismiss that the plaintiff is still a member of

12 the LLC and therefore that there isn't complete diversity,

13 and the case has to be sent off to state court. And yet,

14 the defendant won't let him see any LLC documents.

15           So, you know, guys --

16           MR. GOMBERG:  Your Honor, may I be heard on that

17 point?

18           THE COURT:  -- this isn't a game of After You,

19 Alphonse; this isn't a game of semantics. And I would just

20 add to the analysis that a Motion to Dismiss on

21 jurisdictional grounds is not confined, as the parties have

22 acknowledged, I think, in their 12(b)(6) motion papers,

23 which is not directly before me but I took a look at them,

24 as the parties have acknowledged -- and this is not

25 difficult to acknowledge because it's well-settled law --

| 1 | PROCEEDINGS                      20 |

2    that motions to dismiss on jurisdictional grounds are not

3    confined to the face of the pleadings, that fact can come

4    in.  And so we could in fact term all of this discovery as

5    not just going to the merits but to some extent actually

6    going to the jurisdictional point. It is going to be of

7    interest jurisdictionally what the LLC's papers say about

8    whether the plaintiff is or is not a member.

9            Now you may tell me what you wanted to tell me.

10           MR. GOMBERG:  Thank you, your Honor. We looked at

11   this a little differently than perhaps your Honor had

12   framed it on the jurisdictional point. In plaintiff's

13   initial pleading he did in fact make -- and your Honor can

14   cut me off at any time because I know your Honor didn't

15   intend to hold a motion conference today on the Motion to

16   Dismiss -- but plaintiff did initially plead that he was

17   still a member and that he had a membership interest. Some

18   of those references did remain in the First Amended

19   Complaint.

20           THE COURT:  Sort of.

21           MR. GOMBERG:  These are verified --

22           THE COURT:  Sort of.

23           MR. GOMBERG:  -- pleadings. Yeah. These are --

24           THE COURT:  Sort of.  Sort of.

25           MR. GOMBERG:  -- verified pleadings, your Honor.

```
 1                          PROCEEDINGS                    21
 2  I understand, your Honor. I understand, your Honor. And,
 3  of course, some of those attempts to remove some of those
 4  references were, of course, in response to our initial
 5  Motion to Dismiss.
 6            The other thing is, a more pragmatic point, your
 7  Honor, is that, you know, there has to be a mechanism for
 8  the tendering of the interest for redemption.  And that
 9  hasn't happened here. You can continue to have, you know,
10  certain -- some rights in the LLC as a member or to
11  maintain your membership interest while losing some
12  rights. I framed it incorrectly, your Honor.  And we've
13  cited some case law on that point. So we just look at that
14  as slightly different.  But your Honor's points are well
15  received.
16            I just want to also just tweak one item, if I
17  may, just before we get too far afield of it that was
18  discussed between your Honor and Mr. Steger earlier is
19  that in terms of who produced what or when or why the --
20  what was the reason for serving the non-party
21  subpoenas -- your Honor had stated not getting satisfactory
22  discovery from the opposing party. Just to put things
23  slightly in context, Mr. Steger mentioned we're going to
24  get defendants' initial production on Monday. So there was
25  coordination --
```

```
 1                         PROCEEDINGS                  22

 2            THE COURT:  I understand.

 3            MR. GOMBERG:  -- between the parties.

 4            THE COURT:  I understand.

 5            MR. GOMBERG:  Okay. Thank you, your Honor. I don't

 6   want to belabor that.

 7            THE COURT:  I understand.

 8            MR. GOMBERG:  Okay.

 9            THE COURT:  I understand that.  And the motion is

10   not within the scope of my reference because it is a

11   dispositive motion, the Motion to Dismiss, whether it's

12   jurisdictional or whether it's a 12(b)(c).  And my Order of

13   Reference is what we call a general pretrial reference,

14   which includes scheduling, discovery and other

15   nondispositive pretrial matters but does not include the

16   pending Motion to Dismiss. So I'm not going to be deciding

17   that. But, of course, in shaping what the appropriate

18   bounds of discovery are, I am entitled to, and I do feel

19   obligated to understand what the issues are that are

20   pending before the district judge and, if necessary, to

21   handicap how I think that's going to come out. I will not

22   hesitate to do that.

23            Now, let's get to our practical issues. It sounds

24   like --

25            MR. STEGER:  Your Honor --
```

```
 1                         PROCEEDINGS                23

 2              THE COURT:  Yes.

 3              MR. STEGER:  -- Michael Steger for the plaintiff,

 4    if I may just be heard briefly? I'm going to proceed under

 5    the assumption that you don't really want to hear about the

 6    Motion to Dismiss, but one issue that I think relates to

 7    what we may be discussing momentarily regarding the tax

 8    returns, it's undisputed by both parties that Mr. Palmieri

 9    was a member of the defendant LLC at least through

10    February 25th of this year. So from our perspective, we

11    don't see what the privilege would be for tax returns for

12    years where he was a member of the LLC.

13              THE COURT:  I understand that point. Thank you.

14              MR. STEGER:  Okay.

15              THE COURT:  Now, so it sounds like both parties

16    are amenable to an extension of the discovery schedule

17    here so that the document issues can be worked out without

18    anyone feeling that there's a gun to their head. And it

19    also sounds like both sides want to get through document

20    discovery or perhaps through what we sometimes call

21    substantial completion of document discovery before taking

22    depositions. Is that true, Mr. Steger, on your part?

23              MR. STEGER:  Yes. It's Steger, your Honor.

24              THE COURT:  I'm sorry, Steger.

25              MR. STEGER:  Yes.
```

```
 1                        PROCEEDINGS                   24

 2              THE COURT:  And, Mr. Gomberg, you want to do it in

 3   that order, as well?

 4              MR. GOMBERG:  I concur, your Honor.

 5              THE COURT:  All right. So, look, I'm going to give

 6   the two of you an opportunity to do it right, that is, to

 7   work out as much of this as you possibly can by yourselves.

 8              Let me look at the calendar and figure out, to

 9   begin with, how much time we're going to need for all of

10   this. If I extend the discovery schedule by a period of

11   thirty days, that might not be time enough, particularly

12   given that there are a bunch of holidays coming up and that

13   the worsening COVID-19 situation is not helping very much.

14   So let me pull my calendar up on the --

15              MR. GOMBERG:  Your Honor, may I add a wrinkle to

16   this?

17              THE COURT:  Sure.

18              MR. GOMBERG:  Sorry. This is Mr. Gomberg speaking.

19   Forgive me, your Honor. And we have a -- Mr. Steger

20   mentioned that there's a -- defendants' firm has a large

21   commercial arbitration covering much of December. But

22   that's number one. Number two is that, given the pendency

23   of the Rule 12 motion, your Honor, that is adding some

24   complexity to the schedule because we don't have the scope

25   of the pleadings defined.  We do anticipate serving
```

```
 1                        PROCEEDINGS                    25
 2   counterclaims, but until we know the contours of the
 3   pleadings, that's going to impact discovery, as well, and
 4   depositions, you know, party depositions. So I just raise
 5   that as a kind of complicating factor. I think we are all
 6   just -- we're on the same page, Mr. Steger and I, in terms
 7   of looking for what's a reliable, you know, time table for
 8   discovery. It's just that's a complicating factor.
 9              THE COURT:  I understand.
10              MR. STEGER:  Yes, oh --
11              THE COURT:  Luckily --
12              MR. STEGER:  Your Honor, Just to --
13              THE COURT:  Luckily --
14              MR. STEGER:  I'm sorry.
15              THE COURT:  Luckily -- thank you, gentlemen -- I
16   did not hear counsel ask me to stay discovery pending the
17   outcome of the Motion to Dismiss, because I would have
18   denied that application. I understand there is a
19   possibility, I think a slim one, that the case will be
20   dismissed on jurisdictional grounds, but that only means
21   that the same issues will be joined in another forum. So
22   the discovery would not be wasted.
23              I understand there is a possibility that the
24   individual defendants will be dismissed out for
25   insufficient pleading, but in the event that happens, there
```

1                          PROCEEDINGS                    26

2   will likely be need to amend granted.  And, in any event,

3   the discovery required with respect to the contract claims

4   against the LLC will overlap substantially with the

5   discovery that would be required or requested in the event

6   that the individual defendants are held in as defendants.

7          So we are going to go ahead with discovery. If the

8   pleadings expand at a later date, if counterclaims are

9   served, for example, then discovery may need to expand at

10  that point, as well. But at present, we can go ahead and we

11  will go ahead with discovery bounded by the claims as

12  asserted in the present, I guess it's the Amended

13  Complaint.

14         Now, with that as backdrop, what I'm going to try

15  to do today is give you a new discovery schedule,

16  understanding it's not set in stone and if you get a late

17  decision from the district judge on the Rule 12 motions,

18  and if counterclaims are filed, you know, past the end of

19  what I'm now seeing as an appropriate discovery schedule,

20  well, you know, we can open it up again and do more

21  discovery if we have to.  But I think we need to get

22  started here.

23         So I am thinking, you know, because we have to

24  start somewhere, I am thinking of extending your fact

25  discovery deadline out for about two months to the end of

```
 1                         PROCEEDINGS                    27
 2    February and working backwards from that in terms of how
 3    you're going to resolve the pending document discovery
 4    issues. On the scheduling point, any response, plaintiff?
 5              MR. STEGER:  No, your Honor. Perhaps -- no, I
 6    think maybe, like, the last Friday in February may --
 7              THE COURT:  Exactly, February 26th, that's a
 8    Friday, right.
 9              Defendants?
10              MR. GOMBERG:  Your Honor, I do believe that's
11    still -- it's much appreciated, your Honor -- I believe
12    it's still aggressive; but, of course, we'll take all the
13    time that your Honor's willing to give. You know, we see
14    what exists now is an unworkable schedule, your Honor.
15              THE COURT:  All right, so I'm going to go ahead
16    and give you a new fact discovery deadline of February the
17    26th, and I'll adjust the -- I'll give you a written order
18    adjusting the interim deadlines before and after that, more
19    or less proportionately.
20              Now, in terms of the parties' current document
21    disputes, my view is that they're not properly teed up and
22    that the parties have inadequately met and conferred.  What
23    I would like to see you gentlemen do is address these
24    issues holistically, and by "holistically," I mean address
25    them substantively without paying a whole lot of attention
```

```
 1                        PROCEEDINGS                28
 2   to whether you are disputing a Rule 45 subpoena or
 3   disputing a Rule 34 document request. And do the best you
 4   can on a substantive basis in terms of what the plaintiff
 5   needs and what the defendant will be willing to produce
 6   either from its own files or from the files of its
 7   accountants, which as I mentioned are, as a legal matter,
 8   within the defendants' possession, custody and control;
 9   and give you a deadline within which to come back to me
10   with any issues you cannot resolve, any substantive issues
11   that you cannot resolve.  That is what makes sense to me
12   because it makes you do more work and it makes me do less
13   work.
14           Mr. Gomberg -- let's take it in the other order
15   now -- does that work for you?
16           MR. GOMBERG:  Your Honor, it does work for
17   defendants.
18           THE COURT:  And the plaintiff?
19           MR. STEGER:  Yes, your Honor.
20           THE COURT:  All right, so what I will do is I
21   will -- let's see, what's the position of the actual
22   accounting firm?  So have you been in touch with them,
23   Mr. Gomberg?
24           MR. GOMBERG:  Your Honor, I have. We represent
25   one of them, and --
```

1                              PROCEEDINGS                    29

2              THE COURT:  Which one do you represent?

3              MR. GOMBERG:  Of course, forgive me, your Honor;

4    I should have been clearer. We represent AVM DeMoors, and

5    AVM DeMoors did serve an objection to the subpoena. The

6    Bottadio Group, which is the second accounting firm --

7    their legal name is actually Bottadio and Co. LLP -- they

8    served their own objection, your Honor.

9              THE COURT:  And they have their own counsel?

10             MR. GOMBERG:  They do, your Honor.

11             THE COURT:  All right, and I take it neither of

12   them is planning to actually produce documents today?

13             MR. GOMBERG:  That's correct, your Honor.

14             THE COURT:  Okay. So what I'll do is -- I guess

15   the easiest way as a technical matter to do it is I will

16   grant the defendants' motion to quash to the extend of

17   extending the response date to the subpoenas until such

18   time as the Court has held its next conference, at which

19   time I will rule substantively on any issues, whether

20   under Rule 34 or under Rule 45, that the parties cannot

21   resolve amongst themselves.

22             Now let's get a schedule for when that is going

23   to happen. It seems to me that a couple of weeks should be

24   time enough for the two of you to thrash through these

25   document issues. Yes?

```
 1                        PROCEEDINGS                    30

 2            MR. STEGER:  Yes, your Honor, from the

 3   plaintiff's side.

 4            MR. GOMBERG:  And, your Honor, from the

 5   defendants' side, I agree with you on the meet-and-confer

 6   front.  That should be enough time. As I mentioned, we're

 7   looking to speak, Mr. Steger and I, on Monday. I only raise

 8   again, just for housekeeping purposes -- and it's a high

 9   level -- that we do have a large commercial arbitration in

10   December that a significant amount of my time is being

11   devoted to. So I'm not sure that the production issues will

12   necessarily be resolved, you know, in very short order,

13   even though Mr. Steger and I have been working, I think,

14   pretty collaboratively, although I'm only speaking for

15   myself.

16            THE COURT:  Well, Mr. Gomberg, are you the only

17   lawyer at your firm who's working on this matter?

18            MR. GOMBERG:  I'm primarily responsible for the

19   matter, your Honor.

20            THE COURT:  Because I don't think I can just --

21   I don't think I can just give you a month off from

22   discovery; that's not workable here.

23            I can certainly bring you back -- when does your

24   arbitration start?

25            MR. GOMBERG:  It starts December 7th, your Honor.
```

```
 1                         PROCEEDINGS                    31
 2              THE COURT:  Well, I'm certainly planning on
 3    bringing you back and giving you an order with respect to
 4    any unresolved document production issues before that. But
 5    when I do give you that order, assuming that the parties
 6    can't work everything out themselves, when I do give you
 7    that order and say, you know, you have to produce this,
 8    you don't have to produce that, you have to produce these
 9    but only within a certain period of time, whatever the
10    order ends up being, you know, I am going to expect that
11    production to take place or at least to begin promptly.
12    And I'm not going to want everyone to not do any work on
13    it for a month because you are tied up in another matter.
14    Now, can you arrange within your firm to make sure that
15    someone is backing you up for discovery purposes in this
16    case while you are otherwise engaged?
17              MR. GOMBERG:  I can, your Honor. I can. And just
18    so -- I think I might have been unclear, so forgive me,
19    your Honor, but I do think that Mr. Steger and I should be
20    able to work out as many of the discovery issues as we can,
21    at least have a plan for that production, to hopefully
22    minimize the need for court intervention on that.
23              THE COURT:  All right, so today is the 6th, and
24    I normally don't actually hear discovery disputes on
25    Fridays. For some reason that I cannot now recall, I made
```

```
 1                          PROCEEDINGS                    32
 2   an exception for this one.  What I'd like to do is bring
 3   you back on Thursday, the 19th. Mr. Salim, what does our
 4   calendar look like on Thursday, the 19th?
 5               THE CLERK:  Your Honor, we have an opening at
 6   11 a.m. We have a 10 a.m. scheduled and a 2:15, but 11 is
 7   open now.
 8               THE COURT:  All right, so gentlemen, we are going
 9   to have a discovery conference on the 19th of November at
10   11 o'clock in the morning by telephone, just as we have
11   conducted this one.  And in advance of that conference,
12   which will be a discovery conference to deal with both the
13   accounting subpoenas and the Rule 34 document request,
14   because I don't really want to stand on ceremony as to what
15   rule we're going to do here. In advance of that conference
16   on the 19th I would like a joint letter from the parties.
17   I'd like it by Monday, the 16th.  And in that joint letter
18   I would like the part -- which shall be filed on ECF -- I
19   would like the parties to tell me what disputes remain and
20   to briefly, because I don't think any of this is rocket
21   science, to briefly outline for me with respect to the
22   remaining disputes the parties' respective positions. And I
23   will give you an opportunity to elaborate on the parties'
24   respective positions during the conference on the 19th.
25   Now, can you get that done by the 16th, or do we need to
```

```
 1                          PROCEEDINGS                   33
 2   look at Thanksgiving week, which I'm kind of trying to
 3   avoid?
 4             MR. STEGER:  Mr. Gomberg, I would defer to you.
 5   That seems very aggressive, given the number of document
 6   requests at issue.
 7             MR. GOMBERG:  It does. Certainly, I mean, if
 8   the -- well, I want to work within whatever time frame
 9   works for the Court. If we could get a few more days on
10   that, it might -- I agree with Mr. Steger, and if the Court
11   is amenable, have a few more days to try to resolve those
12   issues.
13             THE COURT:  Well, if we can't make it work for a
14   conference on the 19th, because I do need your joint letter
15   a couple of days in advance so that I have time to consider
16   what the remaining issues are, if we can't make a date to
17   resolve it on the 19th, Mr. Salim, what does Tuesday, the
18   24th, look like?
19             THE CLERK:  Tuesday is open.
20             THE COURT:  I could see you on Tuesday, the 24th,
21   in which case I would need your joint letter by Thursday,
22   the 19th.  That gives you almost two weeks to get that
23   joint letter in.
24             MR. STEGER:  From the plaintiff's side, that would
25   be very helpful, your Honor. And I think that's workable.
```

```
 1                        PROCEEDINGS                34

 2            THE COURT:  Mr. Gomberg?

 3            MR. GOMBERG:  Yes. Thank you, your Honor.

 4            THE COURT:  Okay.  Fine. So promptly meet and

 5   confer. Joint letter by the 19th, please, telling me what

 6   you have been unable to resolve and briefly, succinctly,

 7   outlining your respective positions with respect to the

 8   disputes. I will see you -- let's make it 10 a.m. on the

 9   24th, which is a Tuesday. Same time, same place; in other

10   words -- and by place, I mean same telephone

11   (indiscernible) as today.

12            And just for a housekeeping matter, since you

13   represent one of the accounting firms, you should probably

14   indicate in your letter that, to the extent you are

15   objecting to one or more categories of the subpoena, it is

16   the accounting firm which is making the objection.

17            MR. GOMBERG:  Thank you, your Honor.

18            THE COURT:  And the accounting firm that you don't

19   represent, you might want to get in touch with them and

20   have them send in a me-too letter or some such thing

21   because I don't want anyone to end up being -- having their

22   rights not protected by the fact that they have an

23   unresolved standing issue.  In other words, I don't want

24   that to be the issue. I want to get to the substance.

25            All right? So meet and confer promptly. Joint
```

```
 1                      PROCEEDINGS                    35
 2   letter to me by the 19th.  Anything that you can't work out
 3   yourselves, we will resolve by the 24th. And my request to
 4   both sides, particularly with respect to this issue of is
 5   he or is he not a member of the LLC, he's going to be
 6   entitled to discovery on that point regardless of the
 7   parties' respective positions, whether they agree, whether
 8   they disagree, whether they're willing to say what their
 9   position is. The plaintiff's position now is I was a
10   member, now I'm not anymore because they kicked me out.
11   The defendant is studiously refusing to take a position, I
12   think, on whether he is or isn't a member. Maybe I'm
13   mistaken about that. Mr. Gomberg, is the defendant taking a
14   position?
15             MR. GOMBERG:  Your Honor, we have taken a position
16   that he remains a member of the LLC. And they're --
17             THE COURT:  So your position is that you sent him
18   a letter expelling him and yet you don't have to pay him
19   any money because he's still a member?
20             MR. GOMBERG:  That's correct, your Honor, because
21   there's a distinction here that I want to make sure that
22   I'm being clear about, which we tried to do in our papers.
23   The expulsion, your Honor, is not a termination of that or
24   extinguishment of that membership interest.  The
25   expulsion --
```

```
 1                         PROCEEDINGS                    36

 2              THE COURT:  Well, what is it, then?

 3              MR. GOMBERG:  Well, your Honor, that requires a

 4    tendering of --

 5              THE COURT:  What does it mean?

 6              MR. GOMBERG:  -- the member -- well, your Honor --

 7              THE COURT:  No, no, tell me what it means. It was

 8    your word, your letter, your clients' letter. What does it

 9    mean to expel a member of the LLC if he still has an

10    ownership interest, a membership interest?

11              MR. GOMBERG:  Well, he still has a membership

12    interest, your Honor; that's exactly right. And your

13    Honor --

14              THE COURT:  What does -- let me put it another

15    way -- what does he not have anymore now that he's been

16    expelled?

17              MR. GOMBERG:  Well, your Honor, he no longer has

18    management rights as a non-managing member of the company;

19    he's --

20              THE COURT:  He never had managing rights; he was a

21    minority member and employee --

22              MR. GOMBERG:  But he was the CEO, your Honor.

23              THE COURT:  Yes, but that was an employment

24    relationship. He didn't have management rights by virtue of

25    his membership interest; he had management rights by virtue
```

```
 1                        PROCEEDINGS                    37

 2   of his contract and his employment. So what does he still

 3   have that makes him a, quote, "member," close quote?

 4            MR. GOMBERG:  He still has as ten percent

 5   interest, your Honor, in the LLC, until such time as he

 6   is -- and this is a mechanism that is under the operating

 7   agreement.  And until such time as he has, you know, has

 8   tendered that membership interest for redemption, he

 9   has -- and there's a mechanism for that -- that he retains

10   that membership interest, your Honor.

11            THE COURT:  What does that mean? Does that mean

12   anything other than a book entry?  Does it come with any

13   rights or any economic advantages?

14            MR. GOMBERG:  I don't know what would be termed as

15   an economic advantage. I would think that a membership

16   interest would be an economic advantage and that -- for the

17   plaintiff. I'm trying to answer your Honor's question as

18   best I can. It's complicated to explain the mechanism under

19   the operating agreement because there are complicating

20   factors, such as the circumstances under which the

21   termination of the employment relationship has occurred.

22   So there is actually an interweaving of those two things,

23   your Honor.

24            But what hasn't happened here is there hasn't been

25   a tendering of the membership interest, and there hasn't
```

```
 1                      PROCEEDINGS                    38
 2   been -- the redemption mechanism hasn't been followed here.
 3   He remains a member until such time as that has happened.
 4   And because he remains a member, it's our position that
 5   that's what has given rise to the jurisdictional issue.
 6             THE COURT:  And if he were to, quote, "tender his
 7   membership for redemption" tomorrow, you would then owe him
 8   money, correct, either --
 9             MR. GOMBERG:  Not nec --
10             THE COURT:  -- a small amount of -- either a small
11   amount of money if you're right that he was terminated for
12   cause, he would get his $200,000 back, or a larger amount
13   of money if he were to succeed in convincing the Court that
14   he was terminated without cause.
15             MR. GOMBERG:  Actually, I wouldn't put it in
16   either of those buckets, your Honor.
17             THE COURT:  Because?
18             MR. GOMBERG:  I don't want to divulge too much of
19   the case theory. I would be happy to explain in camera, if
20   your Honor would like to hear that further, but I would say
21   that neither of those are the case, your Honor.
22             THE COURT:  Well, I think you would say that
23   neither of those is the case because you have another
24   theory, a theory which will be articulated in your
25   forthcoming counterclaims under which the plaintiff did
```

```
 1                          PROCEEDINGS                    39

 2   very bad things and consequently owes the LLC a lot of

 3   money, perhaps on breach-of-contract theories, perhaps on

 4   tort theories -- I don't know the details yet. So you have

 5   some sort of offset theory, am I close?

 6             MR. GOMBERG:  That is certainly close, your Honor.

 7             THE COURT:  Okay. I'm not sure that would do it

 8   for you because, on the one hand, there would be a clear

 9   contractual redemption payment right, and on the other hand

10   there would be an unproven counterclaim, the merits of

11   which could take some time to sort out, and I'm not at all

12   sure that Judge Abrams would say you get to hold the

13   redemption money while you try to prove whatever your

14   counterclaims are.  But that will be her call, not mine.

15             MR. GOMBERG:  Right. And I just want to make sure

16   that I'm being clear, because we don't think that, as your

17   Honor has framed an offset theory, we don't think that's

18   solely based on what we'd be pleading in our counterclaim.

19   We think there are contractual bases for such a position.

20             THE COURT:  All right. Look, as I said, the

21   Rule 12 motion is not before me; it's before the district

22   judge.  And I don't know on what schedule she's going to

23   get to it. But certainly for discovery purposes, I'm not

24   sure it makes a difference to the scope of discovery

25   whether your expulsion of the plaintiff did or did not
```

1                            PROCEEDINGS                    40

2    succeed in divesting him of his, quote, "membership

3    interests," close quote.  That is not what the scope of

4    discovery is going to depend on here. So I think you should

5    both keep that in mind.

6              MR. GOMBERG:  Thank you, your Honor.

7              May defendant be heard on one other item?

8              THE COURT:  Go ahead.

9              MR. GOMBERG:  Okay. And if your Honor does not

10   want to hear this at this time, that's fine. But there was

11   an issue of interrogatory responses that was put before the

12   Court.  There were some supplemental interrogatory

13   responses served by plaintiff.  And I'm particularly

14   talking now -- there were two interrogatories at issue, but

15   I'll just raise the first that we think is more important

16   here, which is the password for a cell phone that was

17   turned in by plaintiff. We're talking a couple of months

18   ago, your Honor, and now we're --

19             THE COURT:  Okay.

20             MR. GOMBERG:  -- being told -- yes, sorry, your

21   Honor.

22             THE COURT:  All right, so, counsel, first of all,

23   thank you for bringing that to my attention. I appreciate

24   that. This aspect of the parties' current dispute I think

25   has been properly teed up because it is party discovery,

```
 1                          PROCEEDINGS                  41
 2   and it was -- the defendant properly engaged my
 3   jurisdiction on the point in your opening letter.  So the
 4   state of play at the moment, as I understand it, is that
 5   the plaintiff has served supplemental responses to
 6   interrogatories numbers one and three, which are at issue,
 7   and interrogatory number one, which does, in my view, fall
 8   within the scope of Local Civil Rule 33.3. He has
 9   identified one person to whom he gave a discount and has
10   been a little vague about whether he gave a discount to
11   anybody else.
12            So, Mr. Steger, you are required to answer that
13   interrogatory fully under Local Civil Rule 33.3. It is not
14   good enough to say maybe there were others unless what you
15   mean to say is that the plaintiff is unable to answer the
16   question more precisely because for some reason he doesn't
17   know or can't remember or can't put his hands on the
18   records.  Which is it?
19            MR. STEGER:  Well, your Honor, he -- as set out in
20   the objections, there are documents in the defendants'
21   possession that show who was granted discounted or zero
22   rates. The only specific person Mr. Palmieri can recall
23   that he granted that rate to is his mother. The purpose of
24   the response was he's not saying that is conclusively
25   everyone that he granted a discounted rate to; there may be
```

```
 1                          PROCEEDINGS               42
 2   others, but he was not trying to mislead the defendants.
 3            THE COURT:  So he's not saying there are others,
 4   but I don't have to tell you who they are?
 5            MR. GOMBERG:  Correct.
 6            THE COURT:  He's saying there are others, but I
 7   can't remember who they are; is that what you're telling
 8   me?
 9            MR. STEGER:  No. He's saying there may be others,
10   but he does not recall them, but it's a situation where his
11   recollection could potentially be refreshed, but he does
12   not have documents that would refresh his recollection.
13            THE COURT:  All right, so he doesn't remember and
14   does not have in his possession the documents from which he
15   could ascertain an answer to that question beyond his
16   mother; is that what you're saying?
17            MR. STEGER:  Yes, your Honor.
18            THE COURT:  All right, so you're going to need to
19   supplement that interrogatory answer to make it clear that
20   the failure to list any other names is not due to a
21   refusal, not, in other words, on the basis of your
22   objection, but on the basis of inability given the state of
23   your client's current memory and access to documents. All
24   right?
25            MR. STEGER:  Okay. Thank you.
```

```
 1                        PROCEEDINGS                    43

 2            THE COURT:  With respect to interrogatory number

 3   three, which asked for the passcodes to the iPhone, let me

 4   just make sure I understand what's happening here.  Was

 5   this an iPhone that was issued by the defendant LLC to the

 6   plaintiff for work purposes?

 7            MR. GOMBERG:  It was, your Honor.

 8            THE COURT:  And it was turned in by the plaintiff

 9   when his employment was terminated?

10            MR. GOMBERG:  It was this year, your Honor.

11            THE COURT:  And how is it that if the phone was

12   issued to the plaintiff by the defendant LLC that someone

13   at the LLC doesn't have some kind of administrator rights

14   that would allow the LLC to unlock that phone?

15            MR. GOMBERG:  Your Honor, I wish that were the

16   case. The problem with access to cell -- and this is very

17   cutting edge, and it's in the news. This is the problem

18   that even the FBI was unable to access the shooter in San

19   Bernardino, California, last year, your Honor --

20            THE COURT:  Except ultimately they were.  They

21   turned to some kind of fancy Israeli tech firm, and they

22   cracked that iPhone.

23            MR. GOMBERG:  Well, that's right, your Honor.

24   We're hoping to not have to resort to a fancy Israeli tech

25   firm here. But we're talking about a cell phone that was
```

```
 1                        PROCEEDINGS              44
 2   turned in months ago. It's not like we're asking
 3   Mr. Palmieri what was the cellphone code to the phone you
 4   had in college.  The whole point of a phone password, your
 5   Honor, is it's something you can recall.  And when the
 6   interrogatory response says, you know, I don't recall, and
 7   I mean --
 8              THE COURT:  Okay. Okay. Okay, Mr. Gomberg --
 9              MR. GOMBERG:  -- you could give an option, you
10   could give --
11              THE COURT:  -- Mr. Gomberg, you don't need to
12   belabor the point and --
13              MR. GOMBERG:  Of course, your Honor.
14              THE COURT:  -- the beeping that occurred was
15   almost certainly my 11 o'clock conference trying to get
16   themselves started.  So, Mr. Steger, I have to agree with
17   Mr. Gomberg that it's just not plausible in this day and
18   age that your client could have used an iPhone for a period
19   of years and not have written the password down somewhere,
20   even if he can't remember it. Nobody does --
21              MR. STEGER:  Your Honor, I don't know how
22   plausible that is. I don't have my password written down
23   anywhere. But I --
24              THE COURT:  That's probably because you know it.
25              MR. STEGER:  That is, your Honor. But I have -- I
```

1

2  asked Mr. Palmieri the interrogatory; he's reviewed the

3  interrogatory, and he's submitted a verified response.

4          THE COURT:  Was it a touchscreen iPhone; did it

5  open with his fingerprint or his thumbprint?  Shall we

6  require him to come in and supply that?

7          MR. STEGER:  I don't know, your Honor. I have not

8  seen the phone.

9          THE COURT:  All right, so I am going to direct you

10 to serve a further supplemental response to interrogatory

11 number three, as well.  And in your further supplemental

12 response to interrogatory number three you are to reflect

13 two things; first, your client is to make a good-faith

14 effort to recall and/or turn up his passcode, should he

15 have recorded it somewhere, as most people do. He is

16 required to do that research, if research is required,

17 look for the scrap of paper at the bottom of his knapsack,

18 look for the list he made on his other computer of his

19 secret passcodes, whatever it is that he did, look for his

20 keychain if he used one of the keychain programs available

21 on the internet for keeping people's passcodes. In other

22 words, he is required to do some reasonable digging to dig

23 up that passcode.  And if he is still unable to do so, he

24 is required to disclose in his supplemental interrogatory

25 response whether he had any other means of unlocking the

```
 1                        PROCEEDINGS                    46
 2  phone, for example, whether it unlocked for him in response
 3  to a fingerprint, a thumbprint or a facial recognition
 4  program, which I know they have on the modern iPhones. All
 5  right? So how much time do you need to serve your
 6  supplemental interrogatory responses to one and three?
 7            MR. STEGER:  By the end of next week, your Honor.
 8            THE COURT:  All right, so that would be by
 9  November the 13th. So that is what we will do.
10            All right, I think we are done for today with
11  Palmieri against East Coast Power & Gas. Last chance.  Go
12  ahead.
13            MR. STEGER:  Just one more procedural question,
14  your Honor. Is there -- for the joint report, is there a
15  page limit on that?
16            THE COURT:  Oh, thank you for asking. I would very
17  much like there to be a page limit on that because
18  sometimes when I simply tell people to be succinct, they
19  think "succinct" means something different --
20            MR. GOMBERG:  The opposite, right.  Right, your
21  Honor.
22            THE COURT:  All right. I'm going to give you a
23  total of six pages for the whole shooting match. If you
24  have so much to say that that's not enough pages, then
25  you're going to need to send me a letter application
```

```
 1                      PROCEEDINGS                  47
 2  seeking permission to write longer. And I'm not going to
 3  look with favor on that.  Because I will give you a chance
 4  to flesh it out when we get on the phone.
 5            All right?
 6            MR. GOMBERG:  Thank you, your Honor -- yes. Thank
 7  you, your Honor.
 8            THE COURT:  All right, we will be adjourned.
 9            MR. STEGER:  Thank you, your Honor, for your time.
10            MR. GOMBERG:  Thank you, your Honor.
11            (Whereupon, the matter is adjourned.)
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

48

C E R T I F I C A T E

        I, Carole Ludwig, certify that the foregoing

transcript of proceedings in the case of Palmieri v. East

Coast Power & Gas, LLC et al, Docket #20-cv-02663-RA-BCM,

was prepared using digital transcription software and is a

true and accurate record of the proceedings.




Signature_____

                    Carole Ludwig

Date:     November 18, 2020