UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK


In re:                              :
                                        Docket #20-cv-02663-
 PALMIERI,                          : RA-BCM

                    Plaintiff,      :

   - against -                      :

 EAST COAST POWER & GAS, LLC, et al.,: New York, New York
                                       November 24, 2020
                    Defendants.     :
                                       TELEPHONE CONFERENCE
------------------------------------ :


                      PROCEEDINGS BEFORE
            THE HONORABLE JUDGE BARBARA C. MOSES,
                UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff:          LAW OFFICES OF MICHAEL D. STEGER, PC
                        BY:  MICHAEL DOUGLAS STEGER, ESQ.
                        30 Ramland Road, Suite 201
                        Orangeburg, New York 10962
                        646-517-0600


For Defendants:         LEVITT LLP
                        BY:  TREVOR M. GOMBERG, ESQ.
                        129 Front Street
                        Mineola, New York 11501
                        516-248-9700




Transcription Service:  Carole Ludwig, *Transcription Services*
                        155 East Fourth Street #3C
                        New York, New York 10009
                        Phone:  (212) 420-0771
                        Email:  Transcription420@aol.com

Proceedings conducted telephonically and recorded by
electronic sound recording;
Transcript produced by transcription service

## INDEX

### E X A M I N A T I O N S

| Witness | Direct | Cross | Re-Direct | Re-Cross |
|---------|--------|-------|-----------|----------|
| None | | | | |

### E X H I B I T S

| Exhibit Number | Description | ID | In | Voir Dire |
|----------------|-------------|----|----|-----------|
| None | | | | |

```
 1                        PROCEEDINGS                    3

 2            THE CLERK:  This is case number 20-cv-2663,

 3   Vincent Palmieri v. East Coast Power & Gas, LLC et al.

 4            Counsel, please state your appearances for the

 5   record and please spell your names, beginning with the

 6   plaintiff?

 7            MR. MICHAEL STEGER:  Good morning, your Honor.

 8   Michael Steger, S-t-e-g-e-r, Law Offices of Michael D.

 9   Steger, for plaintiff, Vincent Palmieri.

10            HONORABLE BARBARA C. MOSES (THE COURT):   Good

11   morning, Mr. Steger.

12            And for East Coast?

13            MR. TREVOR GOMBERG:  And good morning, your Honor.

14   For the defendants, Levitt LLP appearing by Trevor Gomberg.

15   That's G-o-m-b-e-r-g, 129 Front Street, Mineola, New York.

16   And good morning, your Honor.

17            THE COURT:  Good morning, Mr. Gomberg.

18            I have read your joint letter dated the 19th.

19   Thank you very much. I'd like to get right to the, what I

20   understand to be the main issue before me today, which is

21   the discoverability of one of the individual defendant's

22   testimony during his divorce action to the extent that

23   testimony directly concerns plaintiff, Mr. Palmieri.  I'll

24   just pause there to give you an opportunity to tell me that

25   you've resolved that question and don't need judicial
```

```
 1                         PROCEEDINGS                  4
 2  resolution. Always hopeful.
 3           MR. STEGER:  It's Michael Steger, your Honor.
 4  Unfortunately, we have not resolved that issue.
 5           MR. GOMBERG:  If I may be heard briefly, your
 6  Honor, because it might shortcut some of this.  This is
 7  Mr. Gomberg for defendants.
 8           THE COURT:  Go ahead, Mr. Gomberg.
 9           MR. GOMBERG:  Thank you, your Honor.
10           Part of the reason for that, your Honor, is we
11  don't believe that the domestic relations law statute
12  permits a party to give these documents voluntarily. We
13  believe these are shrouded in a private proceeding; and so,
14  therefore, we don't think that there is that discretion to
15  turn over documents because they are subject to that
16  statute.
17           What we think is more concerning to us is the
18  circumstances under which Mr. Steger obtained the
19  information that he's using to make this request. And it
20  was information that was, so Mr. Steger tells me,
21  information sent from the attorney for the spouse in that
22  matrimonial proceeding.  So there are also issues because
23  there's a Protective Order in that action.
24           So we think that there are some concerns about
25  whether that information should have been given in the
```

```
 1                        PROCEEDINGS                  5

 2   first place.  We would, frankly --

 3             THE COURT:  Hold up one minute, Mr. Gomberg.

 4             Did someone just join us or leave us, Ms.

 5   Dennett?

 6             THE CLERK:  I think we're okay. It looks like we

 7   have both Mr. Gomberg and Mr. Steger still on the line, and

 8   no one has joined.

 9             THE COURT:  All right. I just heard the beeping

10   that generally means we've lost somebody or gained

11   somebody.

12             THE CLERK:  Yes. For whatever reason, Mr. Steger

13   had two lines that were showing up on the conference

14   monitor, but I think that's what happened.  But we're okay.

15             THE COURT:  All right, go ahead, Mr. Gomberg.

16             MR. GOMBERG:  If Mr. Steger is still there -- I

17   want to make sure he didn't drop off.

18             MR. STEGER:  I'm -- no, I'm --

19             MR. GOMBERG:  I just have one more thing to say.

20             MR. STEGER:  -- I'm still here.

21             MR. GOMBERG:  Okay. All right. Your Honor, I don't

22   want to belabor this.  And if your Honor is leaning in a

23   particular way, which it sounds like your Honor is, I

24   certainly -- you know, if your Honor is inclined to order

25   production over our objections -- and I don't mean to
```

1
2  retread those, which are stated in the letter,
3  Mr. Steger's proposal is reasonable.  You know, in that
4  case, we would work with divorce counsel to, I suppose,
5  redact or obscure everything other than the, as your Honor
6  couched it, what directly concerns the plaintiff.
7           But we are concerned about the circumstances under
8  which plaintiffs became aware of this.  We think that
9  that's an issue. We frankly liken it to a suppression
10 analysis, but I don't want to stand in the way of progress.
11 And we'll defer to the Court's direction.
12          THE COURT:  All right. Anything to add,
13 Mr. Steger?
14          MR. STEGER:  I think it may be more helpful if
15 your Honor has questions, I could address them.
16          THE COURT:  All right, well, the ruling of the
17 Court, then, will be as follows. I've looked at the
18 domestic relations law, New York Domestic Relations Law
19 Section 235, and I note that it does not create a
20 privilege. It does create, it does set up certain
21 confidentiality rules with an exception for a court order.
22 The New York state courts, when confronted with similar
23 questions here, i.e., whether testimony taken in
24 matrimonial proceedings or pleadings or other matters in a
25 matrimonial file should be discoverable in other cases

PROCEEDINGS                                    7

1

2   have imposed a heightened relevance requirement but have

3   not forbidden the discovery entirely. And there are a

4   number of cases in the state courts which have under

5   circumstances somewhat similar to the circumstances here

6   held that the contents of a matrimonial file are

7   sufficiently relevant so as to require that they be

8   produced, often under various confidentiality stipulations

9   in otherwise unrelated litigation.

10           It's not at all clear to me whether the New York

11  state standards here were intended to be or court be

12  binding on a federal court, but I need not determine that

13  issue today. Even applying the state standards, I would

14  find here that there is a very clear need for the

15  documents, that a heightened relevancy standard is met to

16  the extent that the matrimonial file contains testimony in

17  which defendant Milanese speaks expressly and directly

18  about the very issue which is central here, namely, whether

19  the plaintiff is or is not responsible for adverse

20  financial events concerning the company. I think he is

21  absolutely entitled to those portions of the matrimonial

22  testimony, so I will order that they be turned over.

23           I would add that the request here, which is for

24  the portions of the testimony dealing with the financial

25  relationship of the plaintiff to East Coast Power & Gas

1
2    really does not implicate the policy issues behind
3    Section 235, the policy goals of Section 235. And the
4    policy goals of Section 235 are to protect private and
5    sometimes embarrassing details regarding the parties'
6    personal life and sometimes their personal financial life.
7    But the plaintiff here is not interested in Mr. Milanese's
8    personal financial circumstances and certainly does not
9    appear to be interested in his personal life, that is, his
10   relationship with his spouse. He is only interested in what
11   Mr. Milanese said about East Coast Power & Gas and
12   particularly what Mr. Milanese said about the plaintiff's
13   responsibility for the current financial condition of East
14   Coast Power & Gas, and he is entitled to that.
15           So I will require that those portions of the
16   matrimonial testimony be produced. Are the parties in a
17   good enough -- are the parties working well enough so that
18   you can determine between yourselves without further
19   judicial supervision what needs to be redacted and what
20   needs to be produced consistent with the ruling I just gave
21   you?
22           MR. GOMBERG:  Speaking for defendants -- this is
23   Mr. Gomberg -- I believe on our side we are comfortable
24   resolving this matter with Mr. Steger.
25           THE COURT:  All right, is there a confidential

```
 1                              PROCEEDINGS                    9

 2   stip and order in this case?

 3              MR. GOMBERG:  There is, your Honor.

 4              MR. STEGER:  Yes, your Honor.

 5              THE COURT:  All right, so between the good faith

 6   of the two able counsel that I have on the phone and the

 7   availability of the confidential order to prevent any

 8   further transmission of information from the matrimonial

 9   file, I think you ought to be in reasonably good shape on

10   this one.

11              Now, with regard to the iPhone, which was the

12   other issue that you mentioned in your joint letter, it

13   doesn't sound to me like there is an actual motion before

14   me at the moment. I understand that the defendant is

15   frustrated -- I understand that the defendants, I should

16   say, are frustrated and perhaps a little skeptical that the

17   plaintiff can't remember his iPhone password. Most -- and I

18   understand that -- most human beings, certainly Judge

19   Moses included, either recycle the same two or three

20   passwords all the time which they can remember, which

21   security experts warn us not to do but we do anyway

22   because we're human, or else we write them down somewhere.

23   I get that.  But you can't get blood from a stone; and if

24   the man says in sworn interrogatory answers that he can't

25   remember how he unlocked his iPhone, I think you have to
```

```
1                          PROCEEDINGS                    10
2    live with that for now.  And you can certainly grill him at
3    deposition, and I'm sure you will.
4             Am I missing anything there?
5             MR. GOMBERG:  Well, your Honor, just as a point of
6    clarification, this was the subject of our initial letter
7    motion at Document 36 --
8             THE COURT:  I remember.  And I --
9             MR. GOMBERG:  -- I'm seeking -- that's right.
10            THE COURT:  -- I required the plaintiff to amend,
11   which I see that he did.  And in his amended response he
12   says he didn't unlock the phone using any biometric, and
13   he's looked in various places, his garage and so forth, and
14   he can't find the password.
15            So it is what it is, right? For now.
16            MR. GOMBERG:  It would appear that way, your
17   Honor.
18            THE COURT:  All right, you know, if you should
19   find out that he was holding back on you, I'm sure I'll
20   hear about it.
21            MR. GOMBERG:  Thank you, your Honor.
22            THE COURT:  Anything else for today, gentlemen?
23            MR. GOMBERG:  Your Honor, if I may be heard on one
24   discrete issue, it's sort of -- this is Mr. Gomberg
25   speaking again.  And this does kind of dovetail with -- and
```

```
 1                          PROCEEDINGS                    11
 2   I certainly don't want to backtrack off the progress that
 3   Mr. Steger and I have made in meet-and-confer concerning
 4   the party discovery issues -- it's more of a housekeeping
 5   issue that dovetails with both the discovery and the
 6   substantive case issues. At the last conference Mr. Steger
 7   raised that there were certain issues concerning tax
 8   returns and a K-1 that his client, the plaintiff, had
 9   received. I've just been informed that defendants, after
10   having paid substantial sums in tax payments, in the
11   hundreds of thousands of dollars on plaintiff's behalf,
12   now potentially there's going to be a refund of these
13   monies, since the company actually lost money.  So what
14   that means, your Honor, is that instead of this money
15   going back to the company, the refund would be going
16   potentially to the plaintiff directly.  But in fact, this
17   is the company's money paid on the plaintiff's behalf.  So
18   obviously, it's our position --
19             THE COURT:  Well, I think --
20             MR. GOMBERG:  -- that the money should be
21   returned to the company. But we'd ask for a direction,
22   your Honor, that if there are any monies returned, that as
23   not to complicate the case issues any further, that they
24   be escrowed by plaintiff's counsel, given the claim of
25   right by the defendants, your Honor.
```

```
 1                      PROCEEDINGS              12

 2            THE COURT:  Well, explain that to me a little

 3   better.  This is an LLC, correct?

 4            MR. GOMBERG:  It is, your Honor.

 5            THE COURT:  And because it's an LLC, it's a

 6   passthrough for tax purposes, correct?

 7            MR. GOMBERG:  It is, your Honor. It's a little

 8   bit more complicated than that.  And this is -- these are

 9   taxes that were paid on plaintiff's behalf on income that

10   the company generated. So as a result --

11            THE COURT:  Why -- let me just stop you there,

12   because I heard you say that but I don't understand that.

13   Why did the company, the LLC, pay taxes on plaintiff's

14   behalf? Normally what would happen with an LLC is that the

15   plaintiff and every other member of the LLC would get a

16   K-1, and he would submit that K-1 to the IRS along with

17   all of his other tax documents.  And to the extent the K-1

18   showed taxable income, he'd owe tax on it, right?

19            MR. GOMBERG:  That could be, your Honor. I don't

20   pretend to be a tax attorney, and so I don't want to speak

21   with authority on this specific issue. I think it would be

22   irresponsible for me to do so.  And I can't speak to why

23   the company made a business decision to pay those monies on

24   the plaintiff's behalf. I believe there's some contractual

25   basis for that, but that's perhaps a longer explanation,
```

```
1                            PROCEEDINGS                    13
```

2  although I'd be happy to provide that to your Honor if your

3  Honor is interested in it.  But the short of it is that

4  these monies were -- it's our position these are company

5  monies, that because the IRS doesn't look at the payor but

6  rather looks at the taxpayer, that the taxpayer, the

7  plaintiff, would be poised to potentially receive those

8  monies in the form of a refund because of the losses

9  sustained by the company.

10             THE COURT:  How much money are we talking about?

11             MR. GOMBERG:  We're talking about over $250,000,

12  your Honor.

13             THE COURT:  Two hundred and fifty thousand

14  dollars that would come back personally to the plaintiff?

15             MR. GOMBERG:  Actually, I believe it's $265,000,

16  your Honor, that would come back potentially personally to

17  the plaintiff.

18             THE COURT:  And the plaintiff, what was the

19  plaintiff's -- what either was or is, depending on who I'm

20  talking to, the plaintiff's membership share in the LLC?

21             MR. GOMBERG:  Ten percent, your Honor, and

22  remains so --

23             THE COURT:  Ten percent. So that means that

24  there's 2.6 million bucks coming back overall, most of

25  which is going to the individual defendants, right?

```
 1                         PROCEEDINGS                    14

 2             MR. GOMBERG:  I don't know that to be the case,

 3   your Honor. I believe it would be going back to the

 4   company. There's significant debt, and that would probably

 5   be going to pay the bank, pay secured creditors. I don't

 6   know --

 7             THE COURT:  Well, the IRS --

 8             MR. GOMBERG:  -- I don't know that --

 9             THE COURT:  -- the IRS does not send refund

10   checks to people's creditors, as you've just told me the

11   IRS --

12             MR. GOMBERG:  Oh, I understand, your Honor. I

13   didn't mean to shortcut that, your Honor.

14             THE COURT:  Right. So you're saying, I think,

15   that there's approximately 2.6 million bucks coming back

16   to the members of East Coast Power & Gas, LLC, from the

17   IRS, which will be refunded to the individual members, who

18   are the taxpayers, in proportion to their membership

19   interests, correct?

20             MR. GOMBERG:  I can't speak definitively to that.

21   I only know what I've informed your Honor, although your

22   Honor's -- I agree with your Honor's math.

23             THE COURT:  Okay.  Well, that's a start.

24             Now, is this new news to Mr. Steger, or did you

25   know about this, Mr. Steger?
```

```
 1                          PROCEEDINGS                15

 2            MR. STEGER:  This is new news to me, your Honor.

 3   I had not heard of it before now.

 4            THE COURT:  Okay. All right. Well, look, what

 5   I'm about to say hopefully will not shock anybody. It's

 6   new news to me. It's been presented only orally by

 7   Mr. Gomberg whose good faith I obviously don't question

 8   but whose grasp of all of the necessary details I do

 9   question at this stage. I haven't heard enough about

10   anything to give you any kind of ruling or guidance on

11   this. You need to find out what's actually going on,

12   Mr. Gomberg, and you do need to talk to Mr. Steger about

13   it.  And if the facts are as you suggest that they are,

14   some kind of escrow arrangement might make sense.  But I

15   just don't have enough information to give you any kind of

16   guidance at present.

17            MR. GOMBERG:  Thank you, your Honor.

18            THE COURT:  Should we set a time for talking

19   about that, or should I leave it to the parties --

20   counsels' common sense to ask for a conference when and if

21   you need one? You know where to find me.

22            MR. STEGER:  I think the latter makes more sense,

23   your Honor.

24            THE COURT:  All right.

25            MR. GOMBERG:  And I do, as well, your Honor. I
```

```
 1                        PROCEEDINGS                16
 2   think your guidance and suggestion might be all that's
 3   required at this juncture.
 4            THE COURT:  Well, let's hope so.
 5            All right, so the only ruling today, then, will be
 6   with regard to the matrimonial testimony.  The plaintiff is
 7   entitled under reasonable confidentiality sections to the
 8   portions of Mr. Milanese's testimony, whether at trial or
 9   at deposition during his divorce proceedings, concerning
10   the financial condition of East Coast and in particular the
11   plaintiff's responsibility for that financial condition.
12            Not knowing what's in the divorce file and just
13   thinking out loud, which is always dangerous, I don't know
14   if there are also written statements, affidavits, what have
15   you, that should be included in the order.  Who can tell me
16   the answer to that?
17            MR. STEGER:  Your Honor, that's -- Michael Steger
18   for the plaintiff -- we request that the order include any
19   affidavits or declarations, as well.
20            THE COURT:  I think that makes sense because
21   that's really just a form of written testimony.  So any
22   testimony, whether in the form of the written statement or
23   in the form of oral testimony given in court or at
24   depositions. All right?
25            MR. GOMBERG:  And, your Honor, that would be, of
```

```
 1                        PROCEEDINGS                  17
```

 2   course, limited to either the substance that your Honor had

 3   laid out earlier that directly concerns the plaintiff?

 4              THE COURT:  Well, you know, let's be sensible

 5   about this gentlemen. I don't want you to turn over the

 6   three lines of testimony where -- I'm going to make up the

 7   following facts for illustration. I don't want you to turn

 8   over merely the three lines of testimony where Mr. Milanese

 9   says, "Yeah, and all that stuff I just told you, it's

10   Mr. Palmieri's fault," without including all that stuff I

11   just told you.

12              MR. GOMBERG:  I understand.  I just --

13              THE COURT:  Did --

14              MR. GOMBERG:  Sure. And just by way of

15   illustration, your Honor, I mean, there are -- you know, in

16   the investigation that I was able to do into this matter

17   to be able to speak intelligently, there are voluminous --

18   some voluminous affidavits, a very small portion of which

19   concern the plaintiff.  So I think that, you know, we

20   wouldn't -- it sounds like we wouldn't be talking about

21   production of, of course, the entire thing, much of which

22   is not relevant to the issues or to the plaintiff.

23              THE COURT:  I think the devil is going to be in

24   the details here. I think you both understand in theory

25   where the line is to be drawn.  The order, the production

```
 1                         PROCEEDINGS                  18
 2  order, extends to things that Mr. Milanese said about
 3  Mr. Palmieri's relationship to and responsibility for the
 4  financial condition of East Coast Power. You need to
 5  produce enough context so that Mr. Milanese's statements
 6  about Mr. Palmieri actually make sense.
 7            MR. GOMBERG:  Understood, your Honor.
 8            THE COURT:  You don't need to produce materials
 9  having nothing to do with the financial condition of East
10  Coast Power or with the plaintiff's relationship to that
11  financial condition. Okay?
12            MR. GOMBERG:  Understood, your Honor.
13            MR. STEGER:  Thank you, your Honor.
14            THE COURT:  I think we've gone as far as we can
15  go today. I will talk to you as such time as you need me.
16  We will be adjourned.
17            MR. GOMBERG:  Thank you, your Honor.
18            (Whereupon, the matter is adjourned.)
19
20
21
22
23
24
25
```

19

C E R T I F I C A T E

        I, Carole Ludwig, certify that the foregoing

transcript of proceedings in the case of Palmieri v. East

Coast Power & Gas, LLC et al, Docket #20-cv-02663-RA-BCM,

was prepared using digital transcription software and is a

true and accurate record of the proceedings.




Signature_____*Carole Ludwig*_____

                    Carole Ludwig

Date:    December 14, 2020